J-A13002-20

2020 PA Super 203

| IN THE INTEREST OF: A.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3251 EDA 2019 |

Appeal from the Order Entered October 15, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000911-2019

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STRASSBURGER, J.*

OPINION BY BENDER, P.J.E.:                **FILED AUGUST 19, 2020**

D.C. ("Mother") appeals from the October 15, 2019 order finding Mother to be a perpetrator of child abuse against A.C., born in August of 2018 ("Child"), pursuant to 23 Pa.C.S. § 6303, adjudicating Child dependent, pursuant to 23 Pa.C.S. § 6302(1), and transferring custody of Child to the Philadelphia Department of Human Services ("DHS").  After careful review, we affirm.[1]

The trial court issued the following Findings of Fact in its Pa.R.A.P. 1925(a) opinion:

> On May 27, 2019, [DHS] received a Child Protective Services ("CPS") report that Child arrived at St. Christopher's Children['s] Hospital on March 26, 2019.  DHS learned that Child was taken to St. Christopher's by Mother and Father[,] and that

---

* Retired Senior Judge assigned to the Superior Court.

[1] J.M.-C. ("Father") is not a party to this appeal.

Child was suffering from hematomas on the right side of her head. A retinal exam also indicated additional trauma. Hospital staff told DHS that Mother stated that Child had fallen from [Mother and Father's] bed. Also, Mother and Father could not explain the cause of older injuries discovered by CAT scans revealing that Child had subdural[2] hematomas which likely occurred prior to March 26, 2019. DHS interviewed Mother who stated that … Child's injury was caused when … Child fell from a three-foot high bed when Mother was changing … Child's diaper upstairs. Mother denied that Child experienced pervious [*sic*] trauma. DHS interviewed Father who stated that he heard Child fall from the bed when he was downstairs. On May 28, 2019, a report by Dr. Bryan Spellman of St. Christopher's Hospital indicated that Child suffered from non-accidental trauma to the right side of her head, showing layered hematomas, both old and new. Child also suffered from retinal hemorrhaging, indicative of non-accidental trauma in which … [C]hild could have been shaken, dropped[,] or pushed very hard. Dr. Spellman reported that the ten (10) month[-]old Child could not have sustained these types of injuries from solely falling from a bed. On May 30, 2019, DHS obtained an Order of Protective Custody ("OPC") for Child. At a Shelter Care Hearing on May 31, 2019, the court lifted the OPC and ordered the temporary commitment to DHS to stand. DHS filed the underlying Petition for Dependency on June 5, 2019. Thereafter, on October 15, 2019, the [c]ourt held an Adjudicatory Hearing to determine if Mother was a perpetrator of child abuse and if … Child should be adjudicated dependent. Mother was present at the hearing and represented by counsel. After extensive testimony, the trial court made a finding of child abuse versus Mother.[3] The trial court also adjudicated the Child dependent.

Trial Court Opinion ("TCO"), 1/3/20, at 1-3 (citations to record omitted).

On November 14, 2019, Mother filed a timely notice of appeal, along with a concise statement of errors complained of on appeal, in accordance

_____

[2] "Subdural" refers to the space between the dura (the inner lining of the skull) and the brain. *See* N.T. Hearing, 10/15/19, at 22-23.

[3] There was no finding of child abuse versus Father. *See* N.T. Hearing at 93.

- 2 -

with Pa.R.A.P. 1925(a)(2). Mother presents the following issues for our review:

1. Did the trial court err as a matter of law and abuse its discretion by entering a finding of child abuse against Mother pursuant to 23 Pa.C.S. § 6303(b.1)(1) when insufficient evidence was introduced to demonstrate that Mother intentionally, knowingly, or recklessly caused bodily injury to [Child] through a recent act or failure to act?

2. Did the trial court err as a matter of law and abuse its discretion by applying 23 Pa.C.S. § 6381(d) to presume Mother responsible for [Child's] injury in the absence of clear and convincing evidence that [Child's] injury was child abuse as defined in 23 Pa.C.S. § 6303(b.1)(1)?

3. Did the trial court err as a matter of law and abuse its discretion by finding that Mother failed to rebut the *prima facie* presumption of responsibility for [Child's] injury pursuant to 23 Pa.C.S. § 6381(d)?

4. Did the trial court err as a matter of law and abuse its discretion by adjudicating [Child] to be a "dependent child" pursuant to 42 Pa.C.S. § 6302 in the absence of clear and convincing evidence that [Child] was "without proper parental care and control … as required by law?"

5. Did the trial court err as a matter of law and abuse its discretion by committing [Child] to the legal custody of [DHS] in the absence of clear and convincing evidence that removal was clearly necessary?

Mother's Brief at 3-4.

Preliminarily, we note:

The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*Interest of S.L.*, 202 A.3d 723, 727 (Pa. Super. 2019) (quoting *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010)).

The Child Protective Services Law, 23 Pa.C.S. §§ 6301-6387 ("CPSL"), defines "child abuse," in relevant part, as follows:

> (b.1) Child abuse.—The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:
>
> > (1) Causing bodily injury to a child through any recent act or failure to act.
> >
> > …
> >
> > (5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

23 Pa.C.S. § 6303(b.1)(1), (5). "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S. § 6303(a) ("*Bodily Injury").*

Additionally, for the purposes of the CPSL, the terms "intentionally," "knowingly," and "recklessly" have the same meaning as set forth in 18 Pa.C.S. § 302. *See* 23 Pa.C.S. § 6303(a). Section 302 of the Crimes Code defines these kinds of culpability as follows:

> (1) A person acts intentionally with respect to a material element of an offense when:
>
> > (i) If the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
> >
> > (ii) If the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.
>
> (2) A person acts knowingly with respect to a material element of an offense when:

(i)     If the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii)    If the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

(3)    A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b).

The requisite standard of proof for a finding of child abuse pursuant to Section 6303(b.1) is clear and convincing evidence. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. Super. 2015). Clear and convincing evidence is "evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *G.V. v. Department of Public Welfare*, 91 A.3d 667, 672 (Pa. 2014). In certain situations, however, the identity of the abuser need only be established through *prima facie* evidence:

Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child.

*In re L.Z.*, 111 A.3d at 1170 (quoting 23 Pa.C.S. § 6381(d)).

This Court has long recognized the applicability and importance of the evidentiary presumption in Section 6381(d) regarding the identity of the abuser in dependency cases. *See In the Interest of J.R.W.*, 631 A.2d 1019 (Pa. Super. 1993). In *J.R.W.*, we explained:

> *Prima facie* evidence is not the standard that establishes the child has been abused, which must be established by clear and convincing evidence; it is the standard by which the court determines whom the abuser would be in a given case. There is no conflict, constitutional or otherwise, with the clear and convincing evidence standard imposed by the Juvenile Act[, 42 Pa.C.S. §§ 6301-6375 ("Juvenile Act"),] to establish child abuse. The Legislature has determined that the likelihood clearly established abuse has occurred, other than at the hands of the custodian, is so small that *prima facie* evidence the custodian has caused the injury, either by acts or omissions, is all that is required…. Such a standard provides maximum protection for the child victim…. Thus[,] the Legislature has balanced the needs of society and children for protection against the abuser's possible patterned behavior and his/her right to freedom unless found guilty beyond a reasonable doubt.

*Id.* at 1024.

Our Supreme Court reiterated our observation that "the Legislature deemed it wise and necessary to establish a different evidentiary standard by enacting Section 6381(d)'s presumption," to avoid the evidentiary conundrum where the existence of abuse is rather easily proven but the court is unable "to assign responsibility for the heinous act among the responsible adults[,]" and to protect children from future abuse. *In re L.Z.*, 111 A.3d at 1185 (quoting *J.R.W.*, 631 A.2d at 1023). The *L.Z.* Court emphasized that, "when a child is in the care of multiple parents or other persons responsible for care, those individuals are accountable for the care and protection of the child

- 6 -

whether they actually inflicted the injury or failed in their duty to protect the child." *Id.* Moreover,

> the Legislature balanced the presumption of Section 6381(d) by making it rebuttable[,] as it merely establishes "*prima facie* evidence" that the parent perpetrated the abuse. 23 Pa.C.S. § 6381(d). As commonly understood, *prima facie* evidence is "[s]uch evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient." Black's Law Dictionary 825 (6th ed. Abridged 1991). Accordingly, evidence that a child suffered injury that would not ordinarily be sustained but by the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

*Id.*

Instantly, Mother claims that the trial court's finding that she was a perpetrator of child abuse, pursuant to 23 Pa.C.S. § 6303(b.1)(1), was an error of law and abuse of discretion, because "DHS failed to present clear and convincing evidence that Mother intentionally, knowingly, or recklessly caused bodily injury to … [C]hild through act or omission." Mother's Brief at 18-19. She further avers that the trial court's conclusion that "[Child's] injuries were the result of 'inflicted trauma' by Mother amounts to 'innuendo and suspicion,' which is '… not enough to compel a finding of child abuse.'" *Id.* at 19 (quoting

- 7 -

*In Interest of J.M.*, 166 A.3d 408, 424 (Pa. Super. 2017)). In support of her claim, Mother contends that Dr. Marita Lind's testimony[4] only established that Child's injuries "would not be expected typically after a short fall…," and that she did not conclude with a reasonable degree of medical certainty that "Child could not have possibly sustained these injuries absent some sort of non[-]accidental trauma." *Id.* (citing N.T. Hearing at 38).

Additionally, Mother argues that "insufficient evidence was presented to establish that [her] decision to change … [C]hild on the bed was 'reckless….'" *Id.*[5] Mother states that while she usually changed Child's diaper in the pack-and-play, she had used the bed to change Child in the past without incident. *Id.* at 20. "[S]he only turned around for a moment to get a new diaper for … [C]hild, and she did not realize that … [C]hild would be able to roll in the way that she observed." *Id.* Although Mother admitted that it was a mistake to

---

[4] Dr. Lind testified on behalf of DHS as an expert in pediatric child abuse. *See* N.T. Hearing at 12.

[5] Mother improperly relies on the finding in *C.F. v. Pennsylvania Dept. of Public Welfare*, 804 A.2d 755 (Pa. Cmwlth. 2002), that leaving an infant unattended on top of a bunk bed for approximately 15 minutes did not rise to the level of criminal negligence, which similarly requires evidence that the parent "should be aware of a substantial and unjustifiable risk," and that the parent's failure to perceive that risk "involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." Mother's Brief at 19-20 (quoting *C.F.*, 804 A.2d at 758). *See Wells Fargo Bank N.A. v. Spivak*, 104 A.3d 7, 16 (Pa. Super. 2014) (noting that a decision by the Commonwealth Court is not binding on this Court). Regardless, *C.F.* is distinguishable from the instant matter as, in *C.F.*, there was no evidence of trauma to the child prior to the fall and the incident was ruled to be a "dreadful accident[.]" *C.F.*, 804 A.2d at 756, 760-61.

lay Child on the bed when she was "restless," she contends that her actions amount to ordinary negligence, at most. *Id.* The record clearly belies Mother's claims.

In support of its finding of child abuse, the trial court opined the following:

> During the Adjudicatory Hearing on October 15, 2019, Dr. [] Lind … testified that she met Mother and Child on May 27, 2019[,] at St. Christopher's Children's Hospital. During her examination at the hospital, Dr. Lind found soft tissue swelling and redness above … Child's right eye. Dr. Lind testified that a CAT scan was taken of … Child's skull the night she was taken to the hospital.[6] Dr. Lind testified that the CAT [s]can revealed that … Child had a subdural hemorrhage showing different densities of blood at the front of [her] skull suggesting that … Child had been injured in the past. Dr. Lind testified that … Child's brain had shifted to a minimal extent as a result of the subdural hemorrhaging. Dr. Lind also testified that … Child had been examined by an ophthalmologist who determined that in addition to subdural hemorrhage that … Child had hemorrhaging behind both eyes. Dr. Lind testified that the nature of the hemorrhages behind … Child's eyes was not consistent with a short fall.
>
> The DHS Social Worker, Felicia Harrison, testified that Mother had indicated to her that Child had sustained an injury when she fell from a bed. Ms. Harrison also testified that Mother had told her that Child had hit her head on a baby swing and had

---

[6] Child's Glasgow Coma Score ("GCS") was 3 upon EMS's arrival at the home. A GCS can range from 3 to 15. A GCS of 3 indicates that the person is "deeply unconscious or unresponsive." N.T. Hearing at 16-17. Child's GCS improved to a 10 on the way to the hospital, which indicates that she was responsive to stimulation or pain. *Id.* at 17-18. While in the ER, Child's GCS improved to 15, meaning a normal level of consciousness, but then Child began vomiting. *Id.* at 18-20. "[I]n the context of the reported injuries and the reported period of unresponsiveness[,] the vomiting led to … [C]hild having a CAT [s]can done of the head." *Id.* at 20.

fallen on the floor days prior to being taken to the hospital.[7] Ms. Harrison testified that she went to the upstairs bedroom where … Mother said … Child had fallen. Ms. Harrison testified that the bed where … Child had allegedly fallen was not three feet high[,] but shorter. Ms. Harrison also testified that … Mother was … Child's primary caregiver.[8] Ms. Harrison testified that she believed that the height of the bed did not coincide with the injuries sustained by Child. The testimony of Dr. Lind and Ms. Harrison was accorded great weight.

The trial court found clear and convincing evidence … for child abuse based upon the severity and unexplained nature of … Child's injuries. Furthermore, Mother's explanation that the injuries were caused by a single fall from a bed (and possibly by being hit by a swing and falling backwards on another single occasion) did not satisfy the trial court as a plausible explanation to explain the extent of … Child's injuries. Accordingly, the trial court made the determination that Mother was the perpetrator of child abuse….

TCO at 6-8 (citations to record omitted). The trial court's findings are supported by the record.

In regards to Mother's assertion that Dr. Lind failed to testify with a reasonable degree of medical certainty that Child's injuries "could not have possibly [been] sustained" from a fall from the bed, we note that the proper issue that must be addressed here is whether the injuries are entirely consistent with common types of child abuse and inconsistent with Mother's

_____

[7] Ms. Harrison clarified that Child did not fall from the swing but, rather, hit her head while Mother was trying to put her in the swing. N.T. Hearing at 69-70. When asked if there had been any previous falls, Mother also indicated to Dr. Lind that Child was sitting on the floor the day before, lost her balance, and fell backwards. *Id.* at 32-33.

[8] Ms. Harrison reported that Father works outside of the home, Mother stays home with the children, and that she was not aware of any other caretakers. Mother indicated to Ms. Harrison that she primarily takes care of Child. N.T. Hearing at 33.

explanation. *See In re L.Z.*, 111 A.3d at 1167. As DHS points out, Dr. Lind testified that the retinal hemorrhages in the right eye were "consistent" with "an injury of higher velocity such as a crush to the head or a shaking or sheering injury" and were not consistent with Mother's description of a short fall from a bed. DHS's Brief at 14 (citing N.T. Hearing at 28, 36-37, 60). Additionally, Dr. Lind stated that tests performed at the hospital failed to reveal any other explanation for Child's injuries, *i.e.*, a bleeding disorder or metabolic disease. N.T. Hearing at 38. Dr. Lind stated:

> I think what I can say with a degree of medical certainty is that these injuries are not consistent and would not be expected typically after a short fall…. [T]he constellation of the change in consciousness for a period of time[,] the subdural hematoma[,] and the retinal hemorrhages would not be explained with a short fall or a fall of three feet.

*Id.* at 38-40. She further opined that "the process of falling and impacting the ground is not typically sufficient to cause retinal hemorrhages because the forces required to disrupt the blood vessels in the back of the eye usually require that the eye is moving violently within the eye socket and not just one impact." *Id.* at 53-54. "[Child's] subdural hematomas could be caused … by higher velocity injury involving the head moving violently." *Id.* at 62. Based on the foregoing, we deem Dr. Lind's testimony to meet the standard set forth in *L.Z.*

Contrary to Mother's suggestion that the trial court's finding of inflicted trauma was based on mere "innuendo and suspicion[,]" we ascertain that the trial court relied heavily on the overwhelming medical testimony, which

indicated that Child's injuries are likely the result of non-accidental trauma and proved the injuries to be inconsistent with Mother's explanation. *See* TCO at 6-7.[9] We deem the trial court's finding of child abuse to be supported by clear and convincing evidence and, thus, we discern no abuse of discretion.

Next, Mother asserts that "DHS is not entitled to invoke Section 6381(d) to establish a *prima facie* presumption" that she perpetrated the child abuse. She again basis her argument on the assertion that DHS failed to present clear and convincing evidence of child abuse. Mother's Brief at 22-23. Alternatively, she argues that, even if Section 6381(d) is applicable, the *prima facie* presumption has been rebutted. *Id.* at 23. As rebuttal, Mother avers that when Child became unresponsive, she called for Father and directed their son to call 911. *Id.* at 25. She also points to the fact that she stayed with Child in the emergency room overnight, seated in "a little plastic chair," that she gave the doctor a "thorough history[,]" and that she asked appropriate questions. *Id.* Additionally, Mother asserts that she and Father have five

---

[9] In support of her assertion that the trial court's ruling was based on mere innuendo, Mother relied on *In Interest of J.M.*, in which we held that the record lacked sufficient proof to support a finding of child abuse where "there was no clear and convincing evidence that [the child] was abused or that his injuries were non-accidental." *J.M.*, 166 A.3d at 424. *J.M.* is distinguishable from the instant matter, however, as the child in *J.M.* had a fracture that, according to the medical testimony, was consistent with a normal accident involving a child of his age. *Id.* There was no evidence in *J.M.*, as there is in the instant matter, suggesting that the fracture was more likely to have been caused by abuse than by an accident. *Id.* Moreover, there was no history of past injuries to the child, and the mother's testimony did not contradict the medical testimony; rather, she proffered no explanation of how the injury occurred, insisting that she did not know. *Id.* at 427.

older children ("Siblings"), that all Siblings were medically evaluated as part of DHS's investigation, and that Siblings were discharged back to the care of Mother and Father. *Id.* at 25-26. Siblings remain in the care of Mother and Father, and the family has no reported history with DHS. *Id.* at 26.

Having already determined that the trial court properly found sufficient evidence to establish child abuse, we deem Mother's claim that DHS failed to establish *prima facie* evidence that she was the perpetrator of the abuse to be meritless. The record establishes clear and convincing evidence that Child was in Mother's care at the time of injury and that Child's injuries would not ordinarily have been sustained but for the acts or omissions of Mother. ***See*** 23 Pa.C.S. § 6381(d); ***In re L.Z.***, 111 A.3d at 1185-86. Thus, DHS met its burden of establishing *prima facie* evidence that Mother was the perpetrator of child abuse. ***See id.*** at 1185 (emphasizing that a parent is responsible for the care and protection of a child in his or her care, "whether they actually inflicted the injury or failed in their duty to protect the child").

It is clear that once *prima facie* evidence against Mother is established, she is entitled to present evidence to rebut that presumption. ***See Interest of S.L.***, 202 A.3d at 729. "Thereafter, based upon the countervailing evidence, the trial court must determine whether the presumption is valid." ***Id.*** Here, the trial court found that Mother's account of Child's injuries being "caused by a single fall from the bed (and possibly by being hit by a swing and falling backwards on another single occasion)" was not a plausible explanation, considering the severity of Child's injuries. TCO at 7-8. The trial

- 13 -

court did not abuse its discretion in discrediting Mother's implausible explanation and in giving weight to the testimony of Dr. Lind and Ms. Harrison. *See In re L.Z.*, 111 A.3d at 1186. *See also Interest of S.L.*, 202 A.3d at 730 ("Whether or not Mother's rebuttal evidence is credible or persuasive is within the trial court's ultimate purview.").

Moreover, aside from her implausible story, the only other form of "rebuttal" Mother provides consists of statements regarding her actions *following* Child's injury, *i.e.*, seeking medical attention, staying at the hospital with Child, providing doctors with a thorough history, and asking appropriate questions. Mother fails to offer any evidence that she did not inflict Child's injuries, that Child's injuries were accidental, or that she had given responsibility of Child to someone else whom she had no reason to fear at the time of the incident. *See In re L.Z.*, 111 A.3d at 1185. Accordingly, we discern no abuse of discretion in the trial court's determination that Mother perpetrated child abuse.

Next, Mother challenges both the trial court's dependency adjudication and its determination that removal of Child from Mother and Father's custody was necessary. Mother's Brief at 26-31. It is well-established that:

> A "dependent child" is defined, in relevant part, as one who is "without proper parental care or control,[10] subsistence, education as required by law or other care or control

---

[10] "Proper parental control" is defined as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *Matter of C.R.S.*, 696 A.2d 840, 845 (Pa. Super. 1997) (internal quotation marks and citation omitted).

- 14 -

necessary for his physical, mental or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian, or other custodian that places the health, safety or welfare of the child at risk." 42 Pa.C.S.[] § 6302. "The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." *In re D.A.*, 801 A.2d 614, 619 (Pa. Super. 2002) (*en banc*).

*In re M.W.*, [842 A.2d 425, 428] (Pa. Super. 2004). The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency. *In Interest of J.M.*, … 652 A.2d 877, 880 ([Pa. Super.] 1995)….

*In re G.T.,* 845 A.2d 870, 872 (Pa. Super. 2004) (internal brackets omitted).

"Even after a child has been adjudicated dependent, … a court may not separate that child from his or her parent unless it finds that the separation is clearly necessary." *Id.* at 873. "Such necessity is implicated where the welfare of the child demands that he or she be taken from his or her parents' custody." *Id.* (internal quotation marks and citation omitted). Moreover, a finding of abuse may support an adjudication of dependency. *See Interest of I.R.-R.*, 208 A.3d 514, 520 (Pa. Super. 2019); *Matter of C.R.S.*, 696 A.2d at 843. "When the court's adjudication of dependency is premised upon physical abuse, its finding of abuse must be supported by clear and convincing evidence." *Matter of C.R.S.*, 696 A.2d at 843.

Mother claims that the trial court's finding of child abuse against her is not supported by sufficient evidence and, thus, the determination of abuse

cannot sustain the dependency adjudication in this matter. Mother's Brief at 27. Having already determined that the trial court's finding of abuse is supported by clear and convincing evidence, we deem Mother's claim to be meritless. DHS presented medical evidence, which substantiated that Child suffered serious physical injuries, most likely caused by inflicted trauma. This evidence, coupled with Mother's failure to satisfactorily explain the injuries, led the trial court to conclude that Child was without proper parental care and control. *See In re R.P.*, 957 A.2d 1205, 1217 (Pa. Super. 2008); *Matter of C.R.S.*, 696 A.2d at 845. The trial court's adjudication of dependency was clearly supported by its finding of abuse versus Mother. *See Interest of I.R.-R., supra*. Thus, we discern no error or abuse of discretion by the trial court, and we conclude that the trial court properly adjudicated Child dependent.

"Following a finding of dependency, the [trial] court may make an order for the child's disposition pursuant to the Juvenile Act, which is 'best suited to the safety, protection and physical, mental, and moral welfare of the child.'" *In re E.B.*, 83 A.3d 426, 431 (Pa. Super. 2013) (quoting 42 Pa.C.S. § 6351(a)).[11] *See also In Interest of N.M.*, 186 A.3d 998, 1001 n.9 (Pa.

---

[11] The Juvenile Act provides in relevant part:

### § 6351.  Disposition of dependent child

(a)  **General rule.—**If the child is found to be a dependent child the court may make any of the following orders of

- 16 -

Super. 2018) ("Once a child has been adjudicated dependent, the issue of custody and continuation of foster care are determined according to a child's best interest."). Before entering an order of disposition, the trial court is required to make the following findings:

> **(b) Required preplacement findings.—**Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:

---

> disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:
>
> (1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.
>
> (2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:
>
>> (i) Any individual resident within or without this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.
>>
>> (ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.
>>
>> (iii) A public agency authorized by law to receive and provide care for the child.

42 Pa.C.S. § 6351(a)(1), (2).

- 17 -

(1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

(3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances….

42 Pa.C.S. § 6351(b). "[T]he child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved." *In re J.J.*, 69 A.3d 724, 732 (Pa. Super. 2013).

Mother claims that the trial court abused its discretion by committing Child to DHS's custody, because DHS failed to establish by clear and convincing evidence that the removal of Child was necessary. Mother's Brief at 30-31. She further avers that the trial court did not make any finding that an alternative to removal, *i.e.*, home agency supervision and services, would not be feasible. *Id.* at 31. Under the provisions of the Juvenile Act, however, the trial court is given broad discretion in meeting the goal of entering a disposition "best suited to the protection and physical, mental, and moral welfare of the child." *In re S.M.*, 614 A.2d 312, 315 (Pa. Super. 1992) (quoting *In re Lowry*, 484 A.2d 383, 386 (Pa. 1984)). The trial court's decision to permit a child to either remain with his present caretaker(s), *or* to temporarily transfer custody to a qualified agency or individual, is "subject

only to the express limitation" that the disposition be in the best interest of the child. **In re Lowry**, 484 A.2d at 385-86.

Here, the trial court ordered the transfer of custody of Child to the DHS. *See* Order of Adjudication and Disposition ("Order"), 10/15/19, at 1. Additionally, the trial court made the requisite pre-placement findings in accordance with Section 6351(b) of the Juvenile Act, as reflected in the following relevant portion of its Order:

> **CHILD REMOVED FROM HOME**
>
> The court finds that based upon the findings of abuse, neglect or dependency of the minor Child, it is in the best interest of … Child to be removed from the home of [Father] and [Mother]….
>
> **REASONABLE EFFORTS TO PREVENT REMOVAL FROM HOME**
>
> Further, the court hereby finds that to allow … [C]hild to remain in the home would be contrary to … [C]hild's welfare, and that the Philadelphia [DHS] made reasonable efforts to prevent or eliminate the need for removal of … [C]hild from the home.
>
> **CUSTODY/PLACEMENT**
>
> Legal custody of … [C]hild shall transfer to the Philadelphia [DHS].
>
> **CUSTODY AND CONDITIONS**
>
> PLACEMENT – The Child shall remain in kinship care through Bethanna [Community Umbrella Agency]…. Child's placement is the least restrictive placement that meets the needs of … Child and there is no less restrictive alternative available.
>
> VISITATION – The additional condition of visitation is set forth as follows: [Mother and Father] to have supervised visits in the community. Visitation may be modified by agreement of the parties.
>
> **CHILD'S SAFETY**
>
> [] [C]hild is safe in the current placement setting. Safety as of 10/1/2019.

- 19 -

**CURRENT PERMANENT PLACEMENT PLAN**

The current placement goal for … [C]hild is return to parent or guardian.

Order at 1-2 (unnecessary capitalization omitted).

Based on our review, it is evident that the trial court properly focused on the best interests of Child in making its determination of disposition. *See In re R.P.*, 957 A.2d at 1220 (emphasizing that the 1998 amendments to the Juvenile Act make clear that the health and safety of the child shall supersede all other considerations, including the rights of the parents). Given the young age of Child, the trial court had ample evidence to conclude that Child's health, safety, and welfare were best served by removing her from the home. *See In re Frank W.D.*, 462 A.2d 708, 712 (Pa. 1983) (indicating that the age of a child is an appropriate factor to consider in determining whether separating a child from her parent is a "necessity").

We further note that the trial court has maintained a goal of reunification with Mother and Father. *See* Order at 2. We have previously recognized that reconciling the court's decision to remove a child from her parents' custody with the "paramount purpose" of preserving the family unity "may require that temporary custody of the child be given to someone other than the parents until such time as the welfare of the child no longer demands that he be separated from his parents." *In re S.M.*, 614 A.2d at 314-15 (citing *In re Frank W.D.*, *supra* (decrees concerning children are temporary and subject to modification to meet changing conditions; appellant may institute

proceedings to recover her child and present evidence or professional evaluations regarding any improvement in her parenting skills and abilities)). We conclude that the trial court's order of disposition is supported by the record, and we discern no abuse of discretion.

Accordingly, we affirm the October 15, 2019 order finding Mother to be a perpetrator of child abuse, declaring Child dependent and transferring custody of Child to DHS.

Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

Date: *8/19/2020*