J-A01039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.G., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.G., FATHER | : : : : : : : | |
| | : | No. 1093 MDA 2021 |

Appeal from the Dispositional Order Entered July 19, 2021
In the Court of Common Pleas of Lebanon County Juvenile Division at
No(s):  CP-38-DP-0000033-2021

BEFORE:  LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:          **FILED:  FEBRUARY 1, 2022**

R.G. (Father) appeals from the order adjudicating A.G. (Child) dependent.  Father challenges the trial court's dependency adjudication, the placement of Child in foster care, and the effectiveness of court-appointed counsel's representation.  We affirm.

The trial court set forth the factual and procedural history of this case as follows:

> K.G. (Mother) and [Father] are the natural parents of A.G. [(Child)], born [in March of] 2014.  Mother and [E.G.] are the natural parents of [Child's] half-sibling (whose initials are also A.G.), born [in March of] 2020.  Both children are involved in related dependency proceedings.  Father lives in Texas and has not seen [Child] since she was three years old.  [Child] is unable to identify him as her father and lived with Mother until removal from the home.  [Father] testified that the distance has prevented him from pursuing a formal custody arrangement with Mother.
>
> Lebanon County Children and Youth (LCCYS) received a referral for the family on May 17, 2021, relating to inappropriate discipline by [J.B. (Mother's paramour)] of [Child's] half-sibling and relating

to Mother's drug use. LCCYS attempted to contact the family as a result and was unable to do so at that time. On May 20, 2021[, Mother's paramour] had the children in the car while Mother was getting her driver's license renewed at the DMV. [Mother's paramour] drove away and left the children at the home of his [cousins], who called Pennsylvania State Police. LCCYS picked the children up from State Police barracks in Jonestown and requested emergency custody of [Children].

On May 20, 2021, the [court] granted LCCYS a verbal order for emergency protective custody, finding that under the circumstances of child abandonment, LCCYS's immediate taking of custody was necessary to preserve the life and well-being of [Child] and her sibling. The [c]ourt at that time found 1) LCCYS had made reasonable efforts to prevent the need for removal by attempting to locate the children's parents, and 2) given the inability to find Mother, the lack of preventive services was reasonable.

Mother arrived at the state police barracks on May 20th, but after the children had been removed and placed that afternoon. Mother disclosed regular marijuana use and occasional use of methamphetamine and ecstasy to the Agency. LCCYS filed a Petition for Emergency Protective Custody on May 21, 2021, alleging that it would be contrary to [Child's] welfare, safety, and health to remain in Mother's care. LCCYS averred that it sought continuing custody to ensure that Mother would be able to gain sobriety and properly care for [Children,] it had not offered services to prevent family separation due to the necessity of emergency placement, and this lack of services was reasonable given the nature of the emergency. The [court] granted LCCYS's Petition for Emergency Protective Custody on May 21, 2021. A shelter care hearing was also held on May 21st, and pursuant to the shelter care order entered on that date [Child] and her sibling remained in their current non-relative kinship foster placement.

The Agency or a 30-day detox program has conducted a drug test of Mother every week since the end of May, and Mother's first test was positive for marijuana, methamphetamine, and ecstasy. Each drug test since then has been negative. LCCYS filed a Dependency Petition for [Child] on July 1, 2021, alleging that [Child] is dependent under 42 Pa.C.S. § 6302 because she is without proper parental care or control and because she is without a parent, guardian, or legal custodian. At the time of filing, the Petition averred that Father had not been actively involved with [Child,]

- 2 -

and Mother had signed herself into treatment that was then ongoing. The court held a hearing on the Dependency Petition on July 19, 2021.

After the filing of the Dependency Petition, Mother successfully completed the 30-day detox program and began ongoing mental health counseling and drug and alcohol treatment. She is currently living with her mother. Mother's mother is in the process of being approved to care for both children through a private agency, but the children would not be able to return there until Mother completed all her goals. Mother has completed almost all tasks on the initial child permanency plan. However, she still must finish four out of a required twelve hours of age-appropriate parenting classes. LCCYS at the dependency hearing sought to add two new tasks regarding maintaining stable housing and employment for a period of six months. Mother has not missed a weekly visit with the children and the Agency intends to increase visits based on her progress on her goals. The Agency's primary permanency goal for both children is to return to Mother's home.

LCCYS scheduled a video call with Father so that [Child] could meet him in late May or early June, but received no answer to the video call or a subsequent phone call. The caseworker testified he sent Father an email with the link for the video call by Zoom. The caseworker testified that prior to his appearance at the dependency hearing, the Agency had minimal contact with Father. The caseworker could recall two conversations with Father by phone. Father testified that he attempted to contact the caseworker numerous times and finally received a call back after contacting two supervisors. In addition to maintaining regular visits with [Child], Father's remaining permanency goal is to take an age-appropriate parenting class. Father testified that his parents had overnight care of [Child] while he was present, but he has not had overnight care of her on his own. Father's mother has expressed interest in being a resource for [Child], but not for [Child's] sibling. LCCYS conducted a homestudy of paternal grandparents' home, but the kinship approval had not been finalized at the time of the Dependency Hearing. [Child] does not have a preexisting relationship with Paternal Grandmother and the Agency intends to work on visitation and establishing a connection with both Father and Paternal Grandmother before seeking placement. Father testified he understands coming to live with him would be "a drastic lifestyle change" for [Child] and he is willing to work with LCCYS to facilitate such a transition.

[E.G.] was incarcerated in Lebanon County Correctional Facility at the time of the hearing on the Emergency Custody Petition and entered a rehabilitation facility on July 12, 2021. As of the July 19th Dependency Hearing, his earliest release date would be August 12, 2021, after which he may enter a six-to-nine-month aftercare program. Before his incarceration in January of 2021, he lived with Mother and the children and performed parental duties for both children. [E.G.'s] mother has offered to be a placement resource for both children and currently has monthly visitation with both children. She is in the process of having her home approved through a private agency. [E.G.] intends to return to his mother's home when he is free to do so, so the children could not be placed there until he completes his permanency goals.

[Child] is seven years old and has never been enrolled in school. She struggles to read, and LCCYS would need to coordinate with the school district serving her placement to determine her grade level upon enrollment. LCCYS intends to enroll both children in trauma-based counseling related to [J.B.'s] abuse of [Child's] sibling. [Child] and her sibling are placed together in an agency-approved non-relative kinship foster home with the cousins of Mother's paramour. [Children] are safe and doing well in placement, and are comfortable with the foster family. As noted on the record, it was clear to the [c]ourt from meeting with the children before the Dependency Petition Hearing that the siblings possess a strong bond with one another. Both the agency caseworker and [E.G.] testified to such.

Trial Ct. Op., 9/2/21, at 4-8 (citations omitted, some formatting altered).

Child was adjudicated dependent following the July 19, 2021 hearing and ordered to remain in foster care with her sibling.[1] Father filed a timely notice of appeal and complied with Pa.R.A.P. 1925(a)(2)(i).

_____

[1] The testimony of Zachary Northen, LCCYS caseworker, identifies the foster care as kinship, "potentially to the third degree of the foster father" and stated that "[Mother's paramour] is the cousin to the third degree of the foster father." N.T., Dependency H'rg, 7/19/21, at 15. Father refers to this placement as non-kinship. *See* Father's Brief at 14. LCCYS contends that
*(Footnote Continued Next Page)*

On appeal, Father raises the following issues for our review:

1. Whether the trial court erred by adjudicating Child dependent where Child was not dependent as defined by the Juvenile Act, 42 Pa.C.S. § 6302?

2. Whether the trial court committed an error of law and abused its discretion by entering a dispositional order placing Child in the legal and physical custody of LCCYS and ordering that Child be placed in foster care?

3. Whether the trial court committed an error of law and abused its discretion by finding that Child's placement is the least restrictive placement that meets the needs of Child and there is no less restrictive alternative available?

4. Whether the trial court committed an error of law and abused its discretion by finding that reasonable efforts were made by LCCYS to prevent or eliminate the need for removal of Child from the home?

5. Whether the trial court committed an error of law and abused its discretion by entering a dispositional order placing Child in a non-familial foster care placement where Child's [paternal] grandparents immediately came forward as a potential kinship resource and are appropriate caregivers for Child?

6. Whether the trial court violated Father's procedural due process rights by failing to ensure a full and complete record was created to support its adjudication of dependency and disposition?

7. Whether court-appointed counsel for Father rendered ineffective assistance, including by failing to introduce relevant testimony and evidence and adequately cross-examine witnesses regarding relevant facts and information that would have proven Child was not dependent?

---

keeping Child and her sibling together was more important than the two children residing in "separate kinship placements."  LCCYS's Brief at 13-14.

Father's Brief at 4-5 (some formatting altered).[2]

Our standard of review is as follows:

In reviewing an order in a dependency matter, our standard of review requires us to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re Interest of N.B.*, 260 A.3d 236, 245 (Pa. Super. 2021) (Bucks County)

(citation omitted and quotations omitted).[3]

We are guided by the following principles:

To adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

---

[2] Father's brief combines his second, third, and fourth issues into one argument, and his sixth and seventh issues into one argument. We will address them in the same manner. Additionally, we note that an appellant has a duty to ensure that the certified record is complete. Although the certified record does not contain transcripts of testimony from the dependency hearing, a copy of the relevant transcript was included in Father's reproduced record. LCCYS has not objected to the accuracy of those copies. Therefore, we decline to find waiver. *See* Pa.R.A.P. 1921, note (citing *Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012)).

[3] In this memorandum, we cite two Superior Court cases, both of which are captioned *In re N.B.* In order to differentiate these cases, we have added their counties of origin, Bucks County, and Philadelphia County.

> 42 Pa.C.S. § 6302.  Clear and convincing evidence has been defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.
>
> In accordance with the overarching purpose of the Juvenile Act to preserve the unity of the family whenever possible, a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available. This Court has defined proper parental care as that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child.

*In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (citations omitted and formatting altered); *accord* 42 Pa.C.S. § 6351(a).

In determining whether a non-custodial parent may provide proper care and control, this Court has previously considered the level of that parent's involvement in the child's life.  *See*, *e.g.*, *In re B.B.*, 745 A.2d 620, 623 (Pa. Super. 1999).  Where a parent is a stranger to and has not had a relationship with a child, a trial court may find that the parent cannot be designated as a parental caregiver.  *Id.*  Essentially, a parent cannot be "a fit parent by default." *Id.*

"Following a finding of dependency, the trial court may make an order for the child's disposition pursuant to the Juvenile Act, which is best suited to the safety, protection and physical, mental, and moral welfare of the child." *In re A.C.*, 237 A.3d 553, 564 (Pa. Super. 2020) (formatting altered, citation and footnote omitted).  One such disposition is removal of the child from her home:

Under the provisions of the Juvenile Act, . . . the trial court is given broad discretion in meeting the goal of entering a disposition best suited to the protection and physical, mental, and moral welfare of the child. The trial court's decision to permit a child to either remain with his present caretaker(s), or to temporarily transfer custody to a qualified agency or individual, is subject only to the express limitation that the disposition be in the best interest of the child.

*A.C.*, 237 A.3d at 565 (citations omitted, some formatting altered). "[T]he child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved." *In re J.J.*, 69 A.3d 724, 732 (Pa. Super. 2013) (citation omitted).

In determining whether to remove a child from parental care, this Court has explained:

The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing [by the petitioner] that removal is clearly necessary for the child's well-being. In addition, this Court had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.

In addition, this Court has stated it is not for this Court, but for the trial court as fact finder, to determine whether a child's removal from her family was clearly necessary.

*A.B.*, 63 A.3d at 349-50 (citations omitted and formatting altered).

"[A] decision to remove a child from his or her parents' custody must be reconciled with the 'paramount purpose' of preserving family unity." *In re A.L.*, 779 A.2d 1172, 1175 (Pa. Super. 2001) (citation omitted). Further, this Court has explained:

We have previously recognized that reconciling the court's decision to remove a child from her parents' custody with the paramount purpose of preserving the family unity may require that temporary custody of the child be given to someone other than the parents until such time as the welfare of the child no longer demands that [she] be separated from [her] parents. [**In re S.M.**, 614 A.2d 312, 314-15 (Pa. Super. 1992) (citing **In re Frank W.D.**, 462 A.2d 708 (Pa. Super. 1983)] (decrees concerning children are temporary and subject to modification to meet changing conditions; appellant may institute proceedings to recover her child and present evidence or professional evaluations regarding any improvement in her parenting skills and abilities)).

**A.C.**, 237 A.3d at 566.

## Adjudication of Dependency

Father first argues that the trial court erred in adjudicating Child dependent because she was not without a parent or parental care and control. Father's Brief at 20. He contends that at the time of the hearing, he was ready, willing, and able to provide care for Child. Father disputes that because he was not actively involved with Child's life, he was not able to parent her. **Id.** He contends that LCCYS did not provide testimony or evidence regarding any concerns related to his ability to care for Child.[4] **Id.** Father does not dispute that Mother was unable to provide proper parental care or control for Child. **Id.**

By way of background to this issue, LCCYS caseworker Zachary Northen, testified that Father had not been involved with Child's life, had not had contact with her for seven years, and that Child would not recognize him. N.T.

---

[4] The trial court discusses its adjudication in relation to Mother's ability to provide parental care and control to Child but does not address Father's argument. **See** Trial Ct. Op. at 8.

Dependency H'rg, 7/19/21, at 11. Mr. Northen also testified that, prior to the hearing, Father had not been actively involved with LCCYS's attempts to set up a Zoom call for him to meet Child, and Father had not responded to Mr. Northen's attempts to contact him by phone. *Id.* Mr. Northen also stated that in the two phone calls he conducted with Father, Father claimed that Mother "kept the children away from him" and "he just stayed in Texas. I don't know the whole story." *Id.* at 28-29.

Father testified that he was involved with Child for the first four years of her life, but after he moved to Texas, Mother would not allow him to have contact with Child, despite his attempts to call and visit. *Id.* at 40-41. Father stated that the last time he visited with Child was when she was approximately three years old. *Id.* at 40. Father admitted that prior to moving to Texas, his contact with Child was minimal and mostly limited to holidays. *Id.* at 46-47. Child stayed overnight at Paternal Grandparents' house with Father present once, but Father never had a place of his own to house Child. *Id.*

When questioned, Father stated that he tried to reach out "numerous times" and had made "attempts" to visit, but it was "always something that either I couldn't come up to Pennsylvania or [Mother] was busy. It didn't work out at the time." *Id.* at 41. Father also claimed that he could not make phone calls because he "was continuously working." *Id.* With regard to initiating a custody matter, Father claimed that "no family attorneys in Texas will touch anything in Pennsylvania . . . I tried [to contact Pennsylvania attorneys] but again it's the distance . . . It wouldn't work out." *Id.* Father testified he had

- 10 -

never received a call about the Zoom meeting, and that he attempted seventeen times to reach out to Mr. Northen but did not receive responses. *Id.* at 42. Father claimed that following the missed Zoom call, he again attempted to contact Mr. Northen and received no response. *Id.* at 42-43.

> After considering this testimony, the trial court observed:

> I'm familiar with the concept of you're way out of town and it's easy for someone to keep the child from you . . . I can understand all of the practical problems. I just can't feel that they are more important than my relationship with my children or anyone's relationship with their child.

> It's been four years. If we were talking four weeks or four months, I get it. But it's four years. And in seven years, there has been one overnight and that occurred at your parents' house.

N.T. at 62. The court also noted that LCCYS needed to make a more concentrated effort to respond to phone calls in a timely fashion. *Id.* at 64-65. Thus, though the court concluded that LCCYS needed to better communicate with Father, it placed more weight upon the fact that Father had not attempted to forge a relationship with Child in four years.

Pursuant to our standard of review, we conclude that there was no abuse of discretion, especially where Father did not initiate a custody matter, either in Pennsylvania before his move, or in Texas after his move. *N.B.*, 260 A.3d at 245 (Bucks County); *see also* N.T. at 41-43. The court may determine what weight to afford testimony. *N.B.*, 260 A.3d at 245 (Bucks County). Given that Father was admittedly not involved in Child's life for at least four years, it was not an abuse of discretion for the trial court to find that Child

was without proper parental care or control, regardless of Mother's alleged refusal to let Father see Child or any failure on the part of LCCYS. **B.B.**, 745 A.2d at 623 (noting that a parent may not be considered "a fit parent by default"). Accordingly, Father is not entitled to relief on his first issue.

## Child's Placement in Foster Care

Father's next arguments, relating to his second, third, fourth, and fifth issues, all involve Child's placement in foster care. He contends that the trial court erred by removing Child from the home and placing her in foster care, because it was not the least restrictive placement and reasonable efforts were not made to prevent the need for removal. Father's Brief at 22-27. Essentially, Father contends that the court should have provided alternative services, such as contacting the local Texas child welfare agency to arrange for in-home services to be implemented to ensure he was maintaining active involvement in Child's life while she was in his custody in Texas. **Id.** In the alternative, Father argues that Child's paternal grandparents were willing to care for her. **Id.** at 26-28.

The trial court addressed Child's placement as follows:

Having found [Child] dependent, the [c]ourt considered the appropriate disposition under 42 Pa. C.S. § 6351. The [c]ourt had found at proceedings prior to the Dependency Hearing that the lack of services to prevent removal from the home had been reasonable given that the children had been left alone and LCCYS had attempted and been unable to locate their parents. Given the emergent nature of LCCYS's assumption of custody, returning [Child] to Mother's custody even under supervision would not be appropriate at this stage. While Mother had successfully completed a thirty-day detox at the time of the Dependency

- 12 -

Hearing, she has not yet demonstrated that she can maintain a stable home environment that would be safe for [Child] and would meet [Child's] educational needs. Placement outside the home will allow [Child] time to start school and Mother time to maintain sobriety. Father has had no contact with [Child] since she was three, so returning her to his custody will first require time to establish a relationship.

In addition to the parents, LCCYS has been in contact with Mother's mother, Father's mother, and the mother of the father of [Child's] sibling. [E.G.'s] mother knows both children and is willing to be a resource for both, however the children will not be able to reside with her should [E.G.] return to her home when he leaves rehab. The same is true of the maternal grandmother, because Mother lives with her. Paternal Grandmother has indicated that she wants to be a resource for [Child,] but as with Father the Minor Child does not have an established relationship with her paternal grandparents. The siblings have a strong bond with each other. Both children are safe in the non-relative kinship foster care setting. The foster mother has begun to provide [Child] with resources to learn to read. Unlike placement with her paternal grandparents, the kinship foster care will permit [Child] to remain with her sibling. The [c]ourt therefore found that transferring temporary legal custody of [Child] to LCCYS and keeping [Child] in the foster placement was the disposition best suited to the safety, protection and physical, mental and moral welfare of [Child]. *See* 42 Pa. C.S. § 6351 (a)(2)(iii).

Trial Ct. Op. at 8-9.

Our review confirms that the trial court's findings are supported by the record. As noted previously, neither Father nor Paternal Grandparents had any relationship with Child. N.T. at 46-47. Mr. Northen and the court both recognized Child's strong bond with her half-sibling and how important it was to keep the children together, even in a non-kinship placement. *Id.* at 15-16, 60-61. The record also reflects that neither Father nor Paternal Grandparents were prepared to take Child's sibling into care. *Id.* at 12, 25-

26, 47-48. Father's suggestion that the court should have immediately removed Child from the home and sent her to Texas with him would, likewise, have "wrenched" her from the presence of her sister and placed her in a distant and unfamiliar environment outside of the supervision of the court. **See**, **e.g.**, Father's Brief at 27. In the instant case, Mother could not care for Child, and there were no other suitable kinship placements for her after Mother lost custody of Child in May, 2021. **See** Trial Ct. Op. at 8-9.

In determining a placement for a child, the paramount concern is the child's best interests. **A.C.**, 237 A.3d at 565. Therefore, the trial court did not abuse its discretion when it determined that it was in Child's best interest to remain in Pennsylvania with her sibling, and that a non-kinship foster care placement was the best means to achieve that goal, as neither Father nor Paternal Grandparents would take in Child's half-sibling. **Id.** Accordingly, under the circumstances of this case, we conclude that Father's argument that LCCYS failed to exercise reasonable efforts to prevent placement warrants no relief. **See A.B.**, 63 A.3d at 349.

### Effective Representation of Counsel

Finally, Father raises arguments regarding the effectiveness of court-appointed counsel's representation during the dependency hearing.[5] Father's

_____

[5] The trial court did not address the quality of counsel's representation in its Rule 1925(a) opinion beyond noting that "the [c]ourt may only rule on the evidence introduced in the record; therefore, any information [Father's] [c]ounsel at the [d]ependency [h]earing may have known and failed to introduce is outside of the [c]ourt's knowledge." Trial Ct. Op. at 3.

- 14 -

Brief at 28. Father contends that court-appointed counsel did not elicit relevant testimony, did not present evidence that would have supported Father's position, and did not competently question and cross-examine witnesses. *Id.* at 28-34. In support of his argument, Father attached to his brief an affidavit listing various aspects of Mr. Northen's testimony which he claimed were untrue, and listing various facts that Father claims his counsel did not introduce into evidence through his own direct examination.[6] *See* Father's Brief at 110-112.

During dependency proceedings,

> [i]t is well-settled that there exists in parents a right to counsel in dependency cases, which right derives from [the Juvenile Act, 42 Pa.C.S. § 6337]. This right to counsel has also been expressed as a right to effective assistance of counsel, such that the denial of effective assistance is tantamount to having proceeded with no counsel at all.

*In re N.B.*, 817 A.2d 530, 535 (Pa. Super. 2003) (Philadelphia County) (some citations omitted).

---

[6] To the extent that Father argues that his due process rights were violated, he does not fully develop and argue this issue, nor does he support his claim with citations to the relevant authority. Thus, he has waived this claim for purposes of appeal. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465–66 (Pa. Super. 2017) (holding that where "an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived") (citation and quotation omitted)).

In examining the differences between the ineffectiveness standard used in criminal matters and the ineffectiveness standard used in dependency cases,[7] this Court has explained:

> Under the criminal standard, in order to prevail on an ineffectiveness of counsel challenge, the appellant must show that she had a claim of arguable merit, that counsel handled the claim unprofessionally and that counsel's action caused her prejudice. **Commonwealth v. Ferrari**, [593 A.2d 846 (Pa. Super. 1991)]. We hold that in the context of a dependency proceeding, before counsel can be deemed ineffective, under the above stated criminal standard, the appellant must make a strong showing of ineffectiveness of counsel. Under this heightened test the parent must come forward with evidence that indicates to a high degree of likelihood that but for an unprofessional error on the part of counsel, the child would not have been found to be dependent.

**S.M.**, 614 A.2d at 315–16.

Counsel is presumed effective and an appellant has the burden to prove otherwise. **See**, **e.g.**, **Commonwealth v. Bennett**, 57 A.3d 1185, 1195 (Pa. 2012). Where ineffective assistance of counsel is alleged in the context of a dependency hearing, the appellant must show by clear and convincing evidence that counsel handled the matter unprofessionally, and that it is more likely than not that the result would have been different, absent the

---

[7] The court noted that there had previously been a tension in establishing this standard between "adopting a new rule of fundamental fairness" and "adopting the standard of ineffectiveness applied in the criminal law." **S.M.**, 614 A.2d at 315–16. The panel noted issues with both standards, specifically "the rule of fundamental fairness does not provide a sufficiently clear test, adoption of the standard applied in criminal cases is also inappropriate in that such an approach focuses too heavily on the rights of the parents at the expense of the interests of the child." **Id.**

ineffectiveness. *In re K.D.*, 871 A.2d 823, 829 (Pa. Super. 2005). The appellant must make a strong showing of ineffective assistance of counsel; *i.e.* actual prejudice. *S.M.*, 614 A.2d at 316.

Father's claims regarding ineffective assistance of counsel may be separated into two basic categories: that counsel failed to elicit testimony on direct and cross-examination, and that court-appointed counsel was not available when Father attempted to contact him. *See* Father's Brief at 28-34.

With regard to Father's first argument, he claims that he was not provided with notice by LCCYS of either Child's placement into emergency protective custody, or of the shelter care hearing, and that his numerous attempts to contact Mr. Northen or his supervisors were unsuccessful. *Id.* Father contends that had he been able to visit with Child prior to the hearing, the Agency would have been able to see that Child knew him and that they had a "good relationship." *Id.* In support of this assertion, Father also claimed that he resided with Child from the time of her birth until she was four years old, maintained contact with her after first moving to Texas, had multiple "overnight visits at my parents['] home and over the holidays" and that Mother cut off all contact in September 2018. *Id.* Father avers that counsel did not adequately introduce this information during the hearing. *Id.* With regard to Father's second argument, Father contends that court-appointed counsel was ineffective because he attempted to contact her by telephone and email and was not able to do so. *Id.* at 30-31.

- 17 -

Many of these claims contradict Father's own testimony at the dependency hearing. Contrary to his assertions that counsel did not elicit testimony regarding Mr. Northen's failure to contact him, Father testified at length regarding Mr. Northen's alleged failure to contact him and set up the Zoom call, both on direct and cross-examination. N.T. at 40-47. Similarly, contrary to his assertions, Father's own testimony established that he had only one overnight visit with Child at his parents' house; that he only saw her on holidays; and that his general contact was minimal. *Id.* at 40, 46-47. Regarding his claims that Child knew him and recognized him and regarding court-appointed counsel's alleged failure to communicate, court-appointed counsel asked Father, "Is there any other information that you want to share with the court today?" *Id.* at 44. Father replied, "No, ma'am." *Id.* Father did not testify that he had a significant relationship with Child, nor did he testify that he was dissatisfied with the representation of counsel, nor did he request a continuance so that he might have more time to prepare. *See*, *e.g.*, *id.*

Father has not proven by clear and convincing evidence that counsel handled the matter unprofessionally, and that it is more likely than not that the result would have been different, absent the ineffectiveness because Father's claims contradict his own testimony and are not supported by the record. *See K.D.*, 871 A.2d at 829. Accordingly, we discern no prejudice and conclude that court-appointed counsel was not ineffective. *See S.M.*, 614 A.2d at 316.

## Conclusion

For these reasons, we conclude that there was no abuse of discretion, or legal error in the trial court's determination that LCCYS satisfied its burden by clear and convincing evidence, which is supported by the record, and that Father is not entitled to have Child placed in his care.  ***N.B.***, 260 A.3d at 245 (Bucks County); ***A.B.***, 63 A.3d at 349; ***B.B.***, 745 A.2d at 623.  Additionally, we agree with the trial court that the placement of Child was the least restrictive placement available.  Further, we conclude that Father has failed to prove ineffective assistance of counsel. Therefore, no relief is due.  ***See S.M.***, 614 A.2d at 316.  Accordingly, we affirm the trial court's dependency order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/01/2022