J-A27041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: D.M. | : | |
| | : | No. 1348 EDA 2021 |

Appeal from the Order Entered June 9, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001809-2019

BEFORE: PANELLA, P.J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.: **FILED FEBRUARY 24, 2022**

D.M. appeals from the June 9, 2021 order finding her to be a perpetrator of child abuse against H.M. ("Child"), pursuant to 23 Pa.C.S.A. § 6303(b.1)(1), (5), and (7). Here, medical testimony established that Child, who was two-years old at the relevant time, suffered injuries that were the result of non-accidental trauma that occurred while D.M., D.M.'s sibling, and Child's mother ("Mother") were responsible for Child. Moreover, no explanation was provided for how the injuries occurred. Under these facts, the court applied the evidentiary presumption found at 23 Pa.C.S.A. § 6381(d), which establishes a *prima facie* case of abuse by the persons who were responsible for the child when the abuse occurred. Because D.M. failed to rebut that presumption, we are constrained to affirm the order.

During the relevant time, Mother lived with D.M. and D.M.'s sibling. Mother traded babysitting duties with D.M. and D.M.'s sibling as she could not afford childcare.

On October 31, 2019, Mother was at work and had left Child in D.M.'s care. D.M.'s sibling was also home at the time. Mother received a call notifying her that Child had fallen down fourteen or fifteen steps, but nobody had witnessed the fall. Mother then observed Child on a video call and noticed he was going in and out of consciousness. Mother told D.M. and D.M.'s sibling to take Child to the ER. However, when Mother returned home an hour or two later, Child was still there, so she contacted emergency medical services, and Child was transported to the hospital for treatment.

That same day, the Philadelphia Department of Human Services ("DHS") received a Child Protective Services ("CPS") report regarding Child. The report stated that Child had been taken to the hospital and had sustained multiple injuries, including a bruise on his mid-forehead, abrasions on his nose, lacerations on his lips, a small lateral conjunctival hemorrhage on his left eye, and small lesions on his arms, wrists, and hands. Child was also noted to have older, healing lesions that looked like bite marks on the left side of his chest and multiple well-healed lesions on the left side of his upper chest. The hospital also performed blood work on Child, which indicated abdominal trauma. A skeletal survey showed a left clavicle fracture and a healing right radius fracture.

The following day, on November 1, 2019, DHS interviewed Mother and the hospital staff, and visited with Child. The hospital confirmed the allegations in the report and that Child's condition was certified as a near fatality by the treating physician. When DHS asked Mother about the other injuries Child was noted to have sustained in the past, Mother could not provide a reasonable explanation for the injuries.

On November 4, 2019, DHS received additional information. The updates included that Child received two abdomen and pelvis computed tomography ("CT") scans; that the first scan revealed possible liver laceration and pancreatic laceration; that the second scan showed spleen laceration; that Child had an old left clavicle fracture, an old left scapula fracture, and an old right radius fracture; that there was no reasonable explanation for the old fractures and nothing in the computer records regarding the old fractures; and that it was unknown how Mother responded to being told Child had old fractures. The report was also updated to note that Child's prognosis was good and he was doing well, eating, and his pain was controlled.

On November 25, 2019, DHS determined the CPS report was indicated.[1] Mother, D.M., and D.M.'s sibling were identified as perpetrators of child abuse.

---

[1] A report of child abuse is referred to as indicated if an agency determines that substantial evidence of the alleged abuse exists. *See* 23 Pa.C.S.A. § 6303.

On May 8, 2020, after an adjudicatory hearing, Child was adjudicated dependent, and legal custody of Child was transferred to DHS. Notice was given that the next court date would be for a contested permanency review and child abuse hearing.

On June 9, 2021, the trial court held a contested permanency review and child abuse hearing. Mother, Dr. Marita Lind, and a DHS Social Work Supervisor all testified at the hearing. D.M. appeared via video while traveling on an airplane. D.M. was in attendance for a portion of the hearing, but disconnected mid-way through. D.M. did not provide any testimony at the hearing. D.M.'s sibling also did not testify. At the end of the hearing, the court found Mother, D.M., and D.M.'s sibling were perpetrators of child abuse. Accordingly, the October 31, 2019 CPS report was upgraded to founded.[2] This timely appeal followed.

On appeal, D.M. argues the trial court erred and abused its discretion when it determined she was a perpetrator of child abuse against Child.

Our standard of review for dependency cases is as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

---

[2] A report of child abuse is referred to as founded if a judicial adjudication has determined that the alleged abuse occurred. *See* 23 Pa.C.S.A. § 6303.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citations omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

This Court has previously stated the appropriate standard of proof necessary for a finding of child abuse:

> The requisite standard of proof for a finding of child abuse pursuant to Section 6303(b.1) is clear and convincing evidence. Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*Interest of A.C.*, 237 A.3d 553, 558 (Pa. Super. 2020) (citations and internal quotation marks omitted).

In situations where it is clear a child has been abused but it is unclear who the perpetrator of that abuse was, the identity of the perpetrator may be presumed using *prima facie* evidence:

> Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent **or other person responsible for the welfare of the child**.

23 Pa.C.S. § 6381(d) (emphasis added).

This presumption, however, may be rebutted. **See Interest of S.L.**, 202 A.3d 723, 728 (Pa. Super. 2019) (stating that once an agency presents

*prima facie* evidence of abuse, a parent or caregiver presumed to have perpetrated that abuse is entitled to rebut that presumption). Our Supreme Court has explained:

> the Legislature balanced the presumption of Section 6381(d) by making it rebuttable as it merely establishes "prima facie evidence" that the parent [or responsible person] perpetrated the abuse. As commonly understood, *prima facie* evidence is [s]uch evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient. Accordingly, evidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. … The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

***In re L.Z.,*** 111 A.3d 1164, 1185 (Pa. 2015).

On appeal, D.M. argues the trial court improperly found that she was a perpetrator of child abuse, pursuant to 23 Pa.C.S.A. § 6303(b.1), because DHS failed to present clear and convincing evidence that D.M. intentionally, knowingly, or recklessly caused bodily injury to Child through act or omission. This claim fails.

In support of its allegations that Child had suffered child abuse, DHS presented the uncontroverted testimony of Dr. Marita Lind, who testified as

an expert witness in pediatrics and child abuse pediatrics.[3] Dr. Lind testified that Child presented to the hospital with abrasions and bruising on his face and a laceration of his lip due to a fall down the stairs. **See** N.T., 6/9/2021, at 18. Child also had pattern bruising marks on his anterior chest and linear marks in his armpit area which raised a concern for non-accidental trauma. **See id**. at 18, 34-36. Accordingly, a skeletal survey was performed, which revealed multiple fractures of different ages. **See id**. at 18, 23-24, 34-36. Laboratory studies indicated elevated liver and pancreatic enzymes, so an abdominal scan was performed. **See id**. at 18, 37, 44-45. Child was found to have acute traumatic pancreatitis. **See id**. at 18. Child was given a cast for his right forearm and a sling for his left upper arm due to a clavicle and scapular fracture.

Dr. Lind testified that Mother was questioned about the older markings on Child, and Mother indicated she believed the markings occurred when child was in the care of D.M. and D.M.'s sibling, and that another child in the house may have bitten Child. **See id**. at 21. Mother had specifically told Dr. Lind that Child had not had any prior trauma. **See id**. at 23.

---

[3] Both sides stipulated to the fact of Dr. Lind's expertise and experience. **See** N.T., 6/9/2021, at 10-11. Further, Dr. Lind testified that she had been called in for a child abuse consult for Child, as part of her employment at the time of director of the child protection team at the hospital. **See id**. at 14-17.

Dr. Lind identified multiple fractures on Child that had occurred on more than one occasion.[4] Dr. Lind described Child's left scapular fracture as "highly concerning for physical abuse." *Id*; *see also id*. at 27.

Dr. Lind testified that there is radiologic evidence that both of Child's arms, both of Child's scapula, and his clavicle were fractured and that these injuries would have been noticeable in a two-year old because a child of that age is ambulatory and active in using their arms for moving, feeding themselves, and playing. Dr. Lind further testified that these older injuries would have caused Child substantial pain. *See id*. at 30, 33.

Dr. Lind testified that Child could have contributed to an accidental injury, but that would not explain all of the injuries found on Child. *See id*. at 26 ("[A]bsent a significant history of trauma, which would involve maybe a motor vehicle [] multiple times, it's unlikely that there would be an accidental explanation for these injuries at all"). Dr. Lind further testified that one fall could not have caused all of the injuries observed on Child, because the injuries occurred at different times, and many of the injuries observed are not expected injuries caused by such a fall as the one here. *See id*. at 28-30.

Dr. Lind concluded, based on her medical training and experience, that while some of Child's injuries may have been accidental, the totality of his

[4] Dr. Lind later testified she believed at least three incidents, but possibly more, would have had to occur to cause the injuries observed. *See id*. at 49-50.

injuries were not. *See id*. at 39. Dr. Lind further concluded that the fall down the stairs could explain some of the injuries, but the fall was not a plausible explanation for the totality of the injuries. Dr. Lind stated Mother was aware the fall could not have caused all of the injuries on Child. Dr. Lind stated any caretaker should have been able to notice Child's injuries, and corresponding pain caused by those injuries, and she was concerned the injuries had not been recognized and no treatment had been sought. *See id*. at 62.

Dr. Lind ultimately concluded the injuries were the result of child abuse. *See id*. at 39-40, 62. The trial court found Dr. Lind's testimony to be credible.

Based on this medical expert testimony, along with the other testimony provided at the hearing, the trial court concluded Child suffered child abuse.

Notably, at no point on appeal does D.M. dispute that Child was a victim of child abuse. D.M. fails to dispute Dr. Lind's determination, or the trial court's conclusion, that Child suffered from child abuse on more than one occasion. Dr. Lind provided substantial testimony that Child suffered from non-accidental trauma, which caused Child substantial pain and impaired Child's functioning, leading her to determine Child was the victim of child abuse. The trial court credited Dr. Lind's expert testimony and concluded that Child had suffered child abuse as defined by 23 Pa.C.S.A. § 6303. As this finding is not challenged by D.M. on appeal we will not disturb it.

D.M.'s issue on appeal centers on the trial court's finding that she was among the adults responsible for Child when Child's injuries occurred. She

claims, contrary to what the trial court found, there was no clear and convincing evidence that she perpetrated the abuse on Child. However, once DHS met its burden of proving by clear and convincing evidence that Child suffered from child abuse, DHS only had to prove, pursuant to the Section 6381(d) presumption, by *prima facie* evidence that Child could not have sustained his injuries but for the acts or omissions of the persons responsible for him at the time of his injuries. The trial court found D.M. to be a person responsible for Child at the time of his injuries.

A majority of D.M.'s brief focuses on her claim that an act or omission on her part could not have caused the injuries here because she contends she was not home at the time of the injury. D.M. claims she was picking up her own children from school at the time.

However, the application of the Section 6381(d) presumption is not conditioned upon proof of a parent or responsible person's physical presence at the time of a child's injury. **See In re L.Z.**, 111 A.3d at 1184-85. Rather, the presumption "encompasses situations where the parent or responsible person is not present at the time of the injury but is nonetheless responsible due to his or her failure to provide protection for the child." **Id.** at 1184. Mother left Child in D.M.'s care on the day that he was taken to the hospital after sustaining multiple injuries.

Further, the evidence presented at the hearing was sufficient to establish past abuse of Child. This, paired with Mother's testimony that

something always seemed to happen to Child when in D.M.'s care, **see** N.T., 6/9/2021, at 43, 83, 97-98, was sufficient to allow the trial court to apply the presumption to D.M. regarding the evidence of previous abuse.

As noted above, D.M. was entitled to rebut this presumption. However, she did not present any evidence or testimony at the hearing in support of her claim that she was not responsible for Child at the time of his injuries. For a reason that is not apparent from the record, D.M. joined the hearing by video call from an airplane, but soon after had to disconnect when the airplane was about to take off. D.M. does not contend she was not given ample notice of the hearing, explain why she was not available at the time to testify on her own behalf, nor did she ask for any kind of continuance. Therefore, D.M. failed to rebut the *prima facie* presumption that she was a perpetrator of child abuse.

As D.M. failed to rebut the Section 6381(d) presumption, the trial court did not err in finding D.M. was a perpetrator of child abuse. We therefore affirm the order finding D.M. was a perpetrator of child abuse.

Order affirmed. Jurisdiction relinquished.

Judge Lazarus joins the memorandum.

Judge Dubow did not participate in the consideration.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

*Date: 2/24/2022*