J-A28033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: V.C.-L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: V.C.-L. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2332 EDA 2022 |

Appeal from the Order Entered August 8, 2022
In the Court of Common Pleas of Montgomery County Juvenile Division
at No(s): CP-46-DP-0000092-2022

BEFORE: PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:            **FILED MARCH 17, 2023**

V.C.-L. ("Child"), *via* her guardian *ad litem* ("GAL"), appeals from the trial court's order adjudicating her dependent, insofar as the order does not include a finding of child abuse, perpetrated by her parents, K.L.-C. ("Mother") and A.C.-V ("Father"), pursuant to the Child Protective Services Law ("CPSL").[1] Following our careful review, we vacate and remand with instructions.

The trial court set forth the following factual and procedural history:

> This case was initiated via a [d]ependency [p]etition filed by the Montgomery County Office of Children and Youth ("OCY") on June 14, 2022, seeking that [Child] be adjudicated dependent. An [a]mended [d]ependency [p]etition was filed by OCY on July 20, 2022, which added an allegation of child abuse against both [Mother and Father]. A hearing was held before the [trial court]

---

[1] **See** 23 Pa.C.S.A. §§ 6301-6387.

J-A28033-22

on August 1, 2022, with th[e] court's [o]rder of [a]djudication following on August 8, 2022.

On February 8, 2022, Mother and Father . . . brought the then 5-month-old [C]hild to the Children's Hospital of Pennsylvania [("CHOP")], King of Prussia Campus. [Child] was brought in seeking medical care for fussiness and issues related to her legs. A medical evaluation was performed and [Child] received a full-body x-ray, also known as a skeletal survey. At the time of this initial evaluation, the medical professionals were unable to determine the cause of the original complaint. On February 11, 2022, [Child] received an MRI to further investigate the cause of her fussiness and pain. The MRI showed abnormalities in [Child's] legs, and she was started on antibiotics for what was believed to be a bone infection. A second MRI was done on February 16, 2022, which noted abnormalities in the right femur, thigh bone, left tibia, and shin bone, ruling out the bone infection. Additional x-rays of [Child's] legs were taken on February 18, 2022. These images showed healing fractures in the right femur and left tibia.

. . . Kristin Fortin, [M.D.], a physician at [CHOP] . . . testified at the August 1, 2022, hearing as an expert on behalf of OCY. The doctor was consulted on the case after the February 18, 2022[] x-ray images were taken. [Dr.] Fortin indicated in her testimony that the x-rays revealed an oblique fracture in the right femur and left tibia. Although not initially visible, Dr. Fortin noted that once the doctors saw evidence of the fractures on the MRI taken February 18, 2022, signs of these fractures were also found visible when looking back at the February 8, 2022, x-ray images. On February 18, 2022, a referral was made to OCY regarding [Child], which triggered the eventual filing of the original [d]ependency [p]etition on June 4, 2022.

[Dr. Fortin's testimony established the following: Child suffered a broken right femur (thigh bone) and a broken left tibia (shin bone). *See* N.T., 8/1/22, at 6, 12. The fractures were oblique (*i.e.*, at an angle, as opposed to transverse, which would be straight across the bone). *See id*. at 16. An oblique fracture can occur if there is "torsion or twisting around the long access of the bone," or if there is a fall that involves twisting. *See id*. at 17. While an older child, capable of walking, could suffer a "non[-]displaced fracture[] from [an] accident that they would cause themselves," Child was too young to be walking, thus, it was unlikely that she sustained oblique fractures resulting from a

- 2 -

fall on her own. *See id*. at 17-19. Child's injuries similarly could not be explained by a fall off a bed, because, with "an infant[,] most commonly[,] they hit their head[,] and we see like a skull fracture with that type of mechanism. It would need to be a mechanism where it was landing on the leg and turning over[,] but [that] wouldn't explain fractures to both legs." *Id*. at 19.]

[Father had previously reported that the night before he and Mother brought Child to CHOP, he had been sitting with Child on a bed while Mother was in the shower; Child was sitting up on the bed with her legs crossed, and then she fell all the way forward, and Father purported to hear a "crack," after which Child began abnormally crying. *See id*. at 14. Dr. Fortin opined that, even given Father's explanation for how the injuries occurred, there was no "definite accident that could explain everything," which was why she suspected physical abuse had occurred. *See id*. at 31. Mother and Father also indicated Child had participated in physical therapy—for torticollis, *i.e.*, difficulty moving her neck—the day before they brought her to CHOP. *See id*. at 14, 36, 82; still, Dr. Fortin opined, generally there was no "accidental explanation" for Child's injuries, and, more specifically, she would not expect Child's physical therapy to result in these fractures. *See id*. at 39, 48. Child did not have a bone infection, vitamin D deficiency, or any genetic issues known to result in weak bones. *See id*. at 10, 22, 23. Child does have a genetic variant of "unknown significance"; however, it does not play a role in bone development or bone health, but relates to an issue with the immune system which makes infections more likely. *See* N.T., 8/1/22, at 23-24. The hospital's rheumatology team tested Child's blood because, if her genetic variant were causing problems with her immune system, certain blood tests would reflect an abnormality; however, Child's blood tests came back normal. *See id*. at 24.]

Upon conclusion of the one-day hearing before the [trial court], an [o]rder . . . was entered adjudicating [Child] dependent, with Mother and Father retaining legal and physical custody. [The trial court premised its dependency adjudication on "the fact that the evidence that was presented[,] regarding the physical injuries[, was they] would not ordinarily be sustained but for the action or inaction of the parents[,] and [there was] really no plausible explanation on how those injuries occurred." N.T., 8/8/22, at 3.] Th[e] court made the additional finding that [Child] would benefit from the services associated with an adjudication of

dependency. Th[e] court did not find [Child] to be a victim of child abuse.

[Child], through her [GAL], filed the instant appeal . . .. As required, [Child] filed the 1925(b) concise statement contemporaneous with the appeal.

Trial Court Opinion, 9/19/22, at 2-4 (internal citations to the record omitted).[2]

The trial court likewise complied with Pa.R.A.P. 1925.

Child raises the following issues for our review:

1. Did the lower court err in failing to make a finding of child abuse against [M]other and [F]ather[,] where the expert medical testimony presented at the dependency hearing ruled out any underlying medical condition as the cause of . . . [C]hild's injuries, no accident was reported, and [M]other and [F]ather presented no evidence to rebut the presumption against them of child abuse under 23 Pa.C.S.[A.] § 6381(d)?

2. Was the lower court's failure to make a finding of child abuse against [M]other and [F]ather against the weight of the evidence[,] where the expert medical testimony presented at the dependency hearing ruled out any underlying medical condition as the cause of the child's injuries, no accident was reported, and [M]other and [F]ather presented no evidence to rebut the presumption against them of child abuse under 23 Pa.C.S.[A.] § 6381(d)?

Child's Brief at 4.[3]

Our standard of review is as follows:

The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility

---

[2] The trial court held the hearing on August 1, 2022, and a subsequent hearing on August 8, 2022, whereat it issued its ruling. However, the notes of testimony from the August 1, 2022 hearing are erroneously dated August 8, 2022. For clarity, citations to the notes of testimony will reference the correct dates.

[3] OCY joins in Child's brief. **See** OCY Letter, 11/14/22.

determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*Interest of A.C.*, 237 A.3d 553, 557 (Pa. Super. 2020) (internal citations omitted).

In her first issue, Child does not contest her dependency adjudication, but rather asserts that the trial court abused its discretion in declining to make a finding of child abuse against Mother and Father pursuant to the CPSL. We initially note that,

> [although] dependency proceedings are governed by the Juvenile Act[, *see* 42 Pa.C.S.A. §§ 6301-6475, the CPSL] controls determinations regarding findings of child abuse, which the juvenile courts must find by clear and convincing evidence. . . . [T]he [Juvenile] Act and the [CPSL] must be applied together in the resolution of child abuse complaints under the [CPSL, and] reference must be made to the definition sections of both the [Act] and the [CPSL] to determine how that finding [of child abuse] is interrelated.
>
> As part of [a] dependency adjudication, a court may find a parent [or caregiver] to be the perpetrator of child abuse[ ] as defined by the . . . CPSL. . . ..

*Interest of G.R.*, 282 A.3d 376, 380–81 (Pa. Super. 2022) (internal citations, quotations, and indentation omitted; some brackets in original).

The CPSL defines "child abuse," in relevant part, as "intentionally, knowingly or recklessly doing any of the following: (1) Causing bodily injury to a child through any recent act or failure to act. . . .." 23 Pa.C.S.A.

- 5 -

§ 6303(b.1)(1).[4]  As noted above, the standard of proof for a finding of child abuse pursuant to section 6303(b.1)(1) is clear and convincing evidence, which is "evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."  **Interest of A.C.**, 237 A.3d at 558 (internal citation and quotations omitted).  Clear and convincing evidence of abuse is established where there are injuries that are "non-accidental, not self-sustained, and not the result of any bone abnormalities or genetic disorders."  **Interest of G.R.**, 282 A.3d at 382.  When a parent contests an allegation of child abuse, and the sufficiency of the evidence thereof, and offers an explanation for the injury, "the proper issue that must be addressed . . . is whether the injuries are entirely consistent with common types of child abuse and inconsistent with [the proffered] explanation."  **Interest of A.C.**, 237 A.3d at 561 (internal citation omitted).

Child argues the trial court abused its discretion in declining to enter a finding of child abuse against Mother and Father, given Dr. Fortin's testimony that the fractures required "some mechanism involving twisting"; Child was, at five months old, not old enough to walk; nor would a fall explain both fractures; nor would Father's explanation that Child had, while sitting on the

---

[4] For the purposes of the CPSL, the terms "intentionally," "knowingly," and "recklessly" have the same meaning as set forth in 18 Pa.C.S.A. § 302.  **See** **Interest of A.C.**, 237 A.3d at 558 (citing 23 Pa.C.S.A. § 6303(a)).

bed, fallen forward onto the mattress account for the fractures. *See* Child's Brief at 20. Child further highlights Dr. Fortin's testimony that indicated her concern for abuse based on the lack of a medical or accidental cause for the injuries. *See id*. Given Child's "serious injuries that could not be attributed to an accident or an underlying medical condition," and that her parents gave explanations which "could not plausibly have caused the injuries," Child maintains that the trial court abused its discretion in declining to find abuse. *Id*. at 22.

The trial court considered Child's issue and determined it merited no relief. As the court explained:

> Doctor Fortin, the expert witness, indicated that the fractures seen in [Child's] legs are more commonly found in children who are walking, as they can be caused by simple accidents that occur when in motion. (N.T., August 1, 2022, p. 19). The [doctor] stated that "we don't expect" that type of fracture to occur in a non-walker without a caregiver being aware, but she also indicated that they could not look at the x-ray and know exactly what happened or when the injury occurred. ([*Id*. at] 16, 18, 19). Doctor Fortin testified that Mother and Father were cooperative with the medical professionals, and consistent in their recounting of events. ([*Id*. at] 39-40).

> The court heard testimony that there was an incident when Father sat [Child] up, and, while supported, [Child's] body fell forward so that her head was on the mattress of the bed, at which time Father heard a crack. ([*Id*. at] 14). Doctor Fortin testified that it would be "unexpected" for the aforementioned incident to have caused the injuries. ([*Id*. at] 21). It was also testified to that in the month leading up to February 8, 2022, [Child] was receiving physical therapy for an unrelated neck issue but that the therapy would not be expected to lead to the fractures suffered by [Child]. ([*Id*. at] 35, 48).

> The Court in *In the Matter of Kaitlyn Read* stated that "it is an unwarranted conclusion to find abuse simply because the

parents did not introduce any explanations for the injuries. The evidence must show by clear and convincing evidence that the children were abused. [In]nuendo and suspicion alone are not enough to compel a finding of child abuse." 693 A.2d 607, 611 (Pa. Super. 1997) (citing *In the Interest of J.M.*, 652 A.2d 877, 880 (Pa. Super. 1995)).

Similar to the facts in *J.M.*, the testimony presented before the undersigned was only innuendo and suspicion. The record is absent of testimony that would provide a possible incident causing or explanation for the fractures. [OCY] failed to provide any evidence or theory as to how they could have occurred. Instead, OCY presented evidence to support the fact that the doctors were unable to explain the injuries. As opposed to using concrete information and fact, OCY used the lack of explanation as support for a finding of abuse.

It is significant to this court, as stated on the record, that both the OCY caseworker and the [GAL] for [Child] agreed that she should remain with Mother and Father. (N.T., August 1, 2022, p. 102). The OCY caseworker, Carol Robinson, testified that in her opinion; 24-hour supervision was unnecessary and the safety plan could be lifted. Ms. Robinson indicated that Mother and Father were receiving in-home services and willing to voluntarily continue with such services. ([*Id*. at] 64-65).

After careful review of the evidence and testimony presented, it is clear to this court that OCY did not meet its burden in proving that [Child] was abused by Mother and/or Father.

Trial Court Opinion, 9/19/22, at 6-8.

Following our review, we conclude the trial court abused its discretion in declining to make a finding of child abuse. Our review of Dr. Fortin's testimony reveals the following about Child's injuries: Child suffered a right broken femur (thigh bone) and a left broken tibia (shin bone). *See* N.T., 8/1/22, at 6, 12. The fractures were oblique (*i.e.*, at an angle, as opposed to transverse, which would be straight across the bone). *See id*. at 16. An oblique fracture can occur if there is "torsion or twisting around the long access of the bone," or if

there is a fall that involves twisting. *See id*. at 17. While an older child, capable of walking, could suffer a "non[-]displaced fracture[] from [an] accident that they would cause themselves," Child was too young to be walking, thus, it was unlikely that she sustained oblique fractures because she fell on her own. *See id*. at 17-19. Child's injuries similarly could not be explained by a fall off the bed, because, with "an infant[,] most commonly[,] they hit their head[,] and we see like a skull fracture with that type of mechanism. It would need to be a mechanism where it was landing on the leg and turning over[,] *but [that] wouldn't explain fractures to both legs*." *Id*. at 19 (emphasis added). Father had previously reported that the night before he and Mother brought Child to CHOP,

> [M]other was in the shower. And he was with [Child] on the parent's bed, and [Child] was—had her legs crossed. And he helped her to sit up. So[,] when he helped her to sit up, she fell all the way forward so that her head was onto the mattress. He said at that time[,] he heard a crack and [Child] was crying, and it was abnormal crying.

N.T., 8/1/22, at 14; *accord id*. at 50 (OCY caseworker explaining that parents had related to her the same story). Dr. Fortin opined that, even given Father's explanation for how the injuries occurred, there was no "definite accident that could explain everything," which was why she suspected physical abuse had occurred. *See id*. at 31.[5] Child did not have a bone infection, vitamin D

---

[5] Mother and Father also indicated Child had participated in physical therapy the day before, *see* N.T., 8/1/22, at 14, 82; still, Dr. Fortin opined generally
*(Footnote Continued Next Page)*

deficiency, or any genetic issues known to result in these fractures. *See id*. at 10, 22, 23.[6] Dr. Fortin's testimony established that Child suffered non-accidental, non-self-sustained injuries, that did not result from bone abnormalities or genetic disorders. Thus, OCY carried its burden of proving by clear and convincing evidence that Child suffered from abuse. *See*, *e.g.*, *Interest of G.R.*, 282 A.3d at 379, 382 (holding the agency met its evidentiary burden where the medical expert testified that, even though she could not "opine as to how or exactly when the injuries occurred," the child's "three acute oblique and buckle leg fractures were non-accidental, not self-sustained, and not the result of any bone abnormalities or genetic disorders"); *see also Interest of A.C.*, 237 A.3d at 561-62 (affirming a finding of child abuse where the injuries were "likely the result of non-accidental trauma and prove[n] . . . to be inconsistent with [the parent's] explanation").

The trial court cited this Court's 1997 decision in *Matter of Read* in support of its finding that Child was not subjected to abuse. *See* Trial Court Opinion, 9/19/22, at 7. That case, however, is distinguishable. There, an

_____

that there was no "accidental explanation" for Child's injuries, and, more specifically, she would not expect Child's physical therapy to result in these fractures. *See id*. at 39, 48. We also observe that Child's physical therapy was for "torticollis," that is, she had difficulty moving her neck. *See id*. at 36.

[6] Child does have a genetic variant of "unknown significance," however, it does not play a role in bone development or bone health, but instead relates to an issue with the immune system which makes infections more likely. *See* N.T., 8/1/22, at 23-24.

expert witness's testimony about injuries to two five-month-old children "clearly indicated that all of these injuries were ***not representative of the classic type of abuse injuries and could have been caused in a number of accidental ways***. These injuries could have been caused by other children, or adults at any time and under any circumstances." ***See Matter of Read***, 693 A.2d at 611 (emphasis added). Here, by contrast, Dr. Fortin opined that there were no accidental explanations for Child's injuries. ***See***, ***e.g.***, N.T., 8/1/22, at 39 (Dr. Fortin explaining that "we were concerned that there wasn't a medical or accidental explanation, and there were two fractures in an infant, which made us concerned for physical abuse"). The trial court's reliance on our 1995 decision in ***J.M.*** is also inapt, as the holding there was that proof of abuse of one child did not support allegations of neglect or abuse against that child's siblings. ***See J.M.***, 652 A.2d at 881. Rather, this case is similar to the recently decided decisions in ***A.C.***, where a child suffered a likely non-accidental injury that was inconsistent with explanations offered by the parent, and ***G.R.***, where a five-month-old child (as is the case here) suffered leg injuries including, as here, oblique fractures.[7] Lastly, we note that the trial court explained "[i]t is significant to this court . . . that both the OCY caseworker and the [GAL] agreed that she should remain with Mother and

_____

[7] In ***G.R.***, the evidence established that the oblique fracture "most likely occurred from a compression or twisting or torsional force or bending force to the leg." 282 A.3d at 379 (internal citation and quotations omitted).

Father." Trial Court Opinion, 9/19/22, at 7. The trial court's conclusion that this agreement was significant was an abuse of discretion, however, because the parties' agreement that Child should remain with Mother and Father is not germane to a finding of abuse on February 7, 2022.[8] In sum, OCY proved abuse by clear and convincing evidence, and we conclude that the trial court abused its discretion in declining to make a finding of abuse.

In her second issue, Child argues the trial court committed a legal error in declining to apply the rebuttable presumption under 23 Pa.C.S.A. § 6381(d) that Mother and Father were the perpetrators of Child's abuse. The CPSL provides:

> Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S.A. § 6381(d). This Court has explained the interaction between section 6303(b.1)(1), which governs a finding of child abuse, and section 6381(d), which provides for the rebuttable presumption of the **identity** of the perpetrator of abuse, as follows:

> *Prima facie* evidence is not the standard that establishes the child has been abused, which must be established by clear and convincing evidence; it is the standard by which the court determines whom the abuser would be in a given case. . . . The Legislature has determined that the likelihood clearly established

---

[8] We observe that in **G.R.**, notwithstanding the trial court's finding of child abuse against the parents, the abused child was permitted, following the abuse hearing, to resume living with the parents. **See** 282 A.3d at 380 n.9.

abuse has occurred, other than at the hands of the custodian, is so small that *prima facie* evidence the custodian has caused the injury, either by acts or omissions, is all that is required. . . . Such a standard provides maximum protection for the child victim. . . . Thus, the Legislature has balanced the needs of society and children for protection against the abuser's possible patterned behavior and his/her right to freedom unless found guilty beyond a reasonable doubt.

Our Supreme Court reiterated our observation that the Legislature deemed it wise and necessary to establish a different evidentiary standard by enacting Section 6381(d)'s presumption, to avoid the evidentiary conundrum where the existence of abuse is rather easily proven but the court is unable to assign responsibility for the heinous act among the responsible adults, and to protect children from future abuse.

*Interest of A.C.*, 237 A.3d at 558–59 (internal citations, quotations, brackets, and indentation omitted; some ellipses in original); *accord* *Interest of C.B.*, 264 A.3d 761, 771 (Pa. Super. 2021), *appeal denied*, 270 A.3d 1098 (Pa. 2022) (emphasizing that the "likelihood clearly established abuse has occurred, other than at the hands of the custodian, is so small that *prima facie* evidence the custodian has caused the injury, either by acts or omissions, is all that is required").

Section 6381(d)'s presumption is rebuttable: "The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive." *In re L.Z.*, 111 A.3d 1164, 1185 (Pa. 2015). Where such rebuttal evidence is offered, the trial court must

evaluate the validity of the presumption through evaluation of the *prima facie* evidence presented as well as the rebuttal evidence. ***See id***.

Child argues that the trial court adjudicated her dependent based on its finding, by clear and convincing evidence, that her injuries ordinarily would not exist except for the acts or omissions of the parents—and this finding activated the rebuttable presumption pursuant to section 6381(d) that Child's parents had perpetrated the abuse. ***See*** Child's Brief at 24-25. Child maintains that "the trial court's ***legal conclusions*** were not supported by its own finding of fact, [and, therefore, its] ruling . . . is so contrary to the evidence so as to shock one's sense of justice." ***Id***. at 25 (emphasis added).

The trial court explained its ruling as follows:

> As this court did not make a finding of abuse pursuant 23 Pa.C.S.[A.] § 6303(b.1)(1), 23 Pa.C.S[.A.] § 6381(d) does not apply. . . . The court did not find that abuse occurred in this case, and thus no further determination needed to be made.

Trial Court Opinion, 9/19/22, at 8.

Following our review, we conclude the trial court committed an error of law by declining to apply the rebuttable presumption under section 6381(d). As this Court has explained, section 6381(d) provides that "[*p*]*rima facie* evidence is . . . the standard by which the court determines ***whom*** the abuser would be in a given case." ***Interest of A.C.***, 237 A.3d at 558–59 (emphasis added). Hence, section 6381(d)'s rebuttable presumption about the ***identity*** of Child's abuser(s) is only applicable following a finding of abuse by clear and convincing evidence pursuant to section 6303(b.1). Here, as discussed above,

the evidence was sufficient to establish by clear and convincing evidence that Child was the victim of abuse. We further observe that the trial court premised its dependency adjudication—that is, its finding by **clear and convincing evidence** grounds for dependency[9]—on "the fact that the evidence that was presented[,] regarding the physical injuries[,was they] would not ordinarily be sustained but for the action or inaction of the parents . . .." N.T., 8/8/22, at 3. The trial court thus made, on the record, the factual finding required to trigger section 6381(d)'s rebuttable presumption that parents are the ones who abused Child. **See** 23 Pa.C.S.A. § 6381(d). At the hearing, Mother and Father both offered evidence and briefly testified. **See generally** N.T., 8/1/22, at 74-95. Mother and Father were thus afforded the opportunity to offer evidence rebutting the section 6381(d) presumption. Notwithstanding Mother and Father's evidence, the trial court found that Mother and Father had offered no plausible explanation for Child's injuries. **See** N.T., 8/8/22, at 3 (trial court adjudicating Child dependent and further finding that there was "really no plausible explanation [for] how those injuries occurred"). Thus, the trial court has already found that Mother and Father failed to rebut section 6381(d)'s presumption. Accordingly, the trial court erred as a matter of law by failing to identify parents as the perpetrators of Child's abuse pursuant to

---

[9]**See In re G.T.**, 845 A.2d 870, 872 (Pa. Super. 2004) (nothing the burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency).

section 6381(d). Therefore, we vacate the trial court's August 8, 2022 order and remand for the trial court to re-enter the order and *include* a finding that Child is the victim of abuse and that Mother and Father are the perpetrators. *See In re L.Z.*, 111 A.3d at 1185; *see also Interest of G.R.*, 282 A.3d at 385.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2023